UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER LIPSEY, JR., <br><br> Plaintiff, <br><br> vs. <br><br> N. HAND-RONGA, et al., <br><br> Defendants. | 1:17-cv-01704-LJO-GSA-PC <br><br> **SCREENING ORDER** <br><br> **ORDER DISMISSING FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND** <br> **(ECF No. 12.)** <br><br> **THIRTY-DAY DEADLINE TO FILE SECOND AMENDED COMPLAINT** |

## I. BACKGROUND

Christopher Lipsey, Jr. ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on December 19, 2017. (ECF No. 1.) On April 9, 2018, Plaintiff filed the First Amended Complaint as a matter of course. (ECF No. 12.)

The First Amended Complaint is now before the court for screening. 28 U.S.C. § 1915A.

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

"frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III. SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is presently incarcerated at Kern Valley State Prison in Delano, California. The events at issue in the First Amended Complaint allegedly occurred at Corcoran State Prison in Corcoran, California, when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff names as defendants H. Hand-Ronga (Psychologist), C. Bell (Hiring Authority), S. Gates (Chief Health Care Officer), D. Davey (Warden), S. Kernan (Secretary, CDCR), and the City of Corcoran (collectively, "Defendants"). Plaintiff alleges as follows.

On March 20, 2017, Plaintiff was pulled out of his cell and placed in the rotunda for suicide evaluation by defendant Dr. Hand-Ronga. At the time Plaintiff was not in the mood for a session or to converse, but he answered numerous questions asked by defendant Hand-Ronga,

then felt more depressed from discussing subjects mentioned, such as family. Plaintiff said, "This is enough, I'm done having you pick my brain, go away." ECF No. 12 at 6.[1] Defendant Hand-Ronga got visibly upset and left. Plaintiff was not written up for being disrespectful or for any other reason based on this exchange.

A couple of months later, every time Plaintiff left his cell, inmates would yell, "Amber Alert." ECF No. 12 at 6. Plaintiff did not understand why because Plaintiff does not associate with other inmates. Plaintiff went through some of his medical files to send to his aunt for safekeeping. He sent his aunt a stack of duplicates and was going through them again the next day when he realized she (Hand-Ronga) had labeled Plaintiff as a sex offender.

Plaintiff has never been written up for being disrespectful or for any sex offense. He has never been accused of anything close to being a sex offender in his life. Defendants Bell, Davey, Kernan, Gates, and City of Corcoran found that defendant Hand-Ronga was acting within their policy, which showed a callous indifference to Plaintiff's rights. Plaintiff has lost his trust in the mental health system and has resorted to cutting himself again instead of telling someone when he is under stress.

On August 1, 2017, Plaintiff wrote to his aunt, sending her some confidential medical records for future legal purposes. Because there were so many documents Plaintiff had to place the envelope under his cell door, which is not unusual, instead of through the food port. Officers pick up mail at approximately 7:30pm - 9:00pm. Usually inmates must have their mail already outside the door because officers are too busy to continually pick up mail. Plaintiff alleges that defendants Davey and Kernan should have had a better method for mail pick-up.

Plaintiff placed his mail under his cell door at approximately 7:30pm and then took a quick nap. When he woke up at about 7:45pm he noticed his letter was no longer under the door. Plaintiff thought the officers had picked up the mail, but about twenty minutes later it was back under his door. This letter contained a document labeling Plaintiff a sex offender.

---

[1] All page numbers cited herein are those assigned by the court's CM/ECF system and are not based on Plaintiff's pagination of the complaint.

Plaintiff's letter was taken into someone else's cell by an inmate using a string tied to something and thrown on the tier to pull it into the cell. Somehow the letter was put back under Plaintiff's door. Even if Plaintiff's aunt did not see the letter, or overlooked the information, Plaintiff is forced to decide when and how to tell his family that he was labeled a sex offender. Plaintiff's mother and aunt have not written to him in months.

Plaintiff's life may now be in jeopardy, and his sense of paranoia is heightened, especially because he is due to return back to the general population in March or April 2018. Other inmates now think he is a sex offender. Plaintiff filed a 602 medical appeal against the doctor who labeled him a sex offender. He has also prepared a 602 appeal about the policy of making inmates put their mail outside their door for pick-up, but he can only file appeals every fourteen days.

Plaintiff has had paranoid rages against three prior cell mates, resulting in Plaintiff's cell mates being assaulted with serious bodily injury, the latest one attempted murder, in a four-year span of time.

Plaintiff is now extra paranoid that someone is going to harm him, especially a cell mate. Out of four cell mates Plaintiff got paranoid and attacked three, two with assaults with serious bodily injury. Plaintiff requests an emergency temporary restraining order preventing the CDCR from forcing another cell mate on him when he is released into the general population.

Plaintiff requests monetary damages, including punitive damages; court fees; and injunctive relief.

### IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386,

393-94 (1989) (quoting <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3 (1979)); <u>see</u> <u>also</u> <u>Chapman v. Houston Welfare Rights Org.</u>, 441 U.S. 600, 618 (1979); <u>Hall v. City of Los Angeles</u>, 697 F.3d 1059, 1068 (9th Cir. 2012); <u>Crowley v. Nevada</u>, 678 F.3d 730, 734 (9th Cir. 2012); <u>Anderson v. Warner</u>, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006); <u>see</u> <u>also</u> <u>Marsh v. Cnty. of San Diego</u>, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" <u>Preschooler II v. Clark Cnty. Sch. Bd. of Trs.</u>, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." <u>Preschooler II</u>, 479 F.3d at 1183 (quoting <u>Johnson</u>, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." <u>Arnold v. Int'l Bus. Mach. Corp.</u>, 637 F.2d 1350, 1355 (9th Cir. 1981); <u>see</u> <u>also</u> <u>Harper v. City of Los Angeles</u>, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A. **Preliminary Injunctive Relief**

In the First Amended Complaint, Plaintiff requests an emergency temporary restraining order preventing the CDCR from forcing another cell mate on him when he is released into the general population. This matter was resolved by the District Judge's order issued on April 20, 2018, which denied Plaintiff's January 8, 2018, motion for preliminary injunctive relief. (ECF No. 13.) The District Judge adopted the Magistrate Judge's findings and recommendation, in which Plaintiff was advised that the court lacks jurisdiction to issue an order for the CDCR to grant Plaintiff single-cell status because such an order would not remedy any of the claims upon which this case proceeds. (ECF No. 11.) Requests for prospective relief are limited by 18 U.S.C.

§ 3626(a)(1)(A) of the Prison Litigation Reform Act, which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."

Therefore, Plaintiff's request in the First Amended Complaint for an emergency temporary restraining order is moot.

### B. <u>Municipal Liability -- City of Corcoran</u>

Plaintiff names the City of Corcoran, which is a municipality, as a defendant. A municipality or other local government may be liable under Section 1983 if the governmental body "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. <u>Monell v. N.Y. City Dep't of Social Servs.</u>, 436 U.S. 658, 691–92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipalities cannot be held vicariously liable under Section 1983 for their employees' actions. <u>Id.</u> at 691. Liability is limited to the persons who caused the constitutional violations at issue. <u>Id.</u> Because the statutory language thus precludes vicarious liability, local governments "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." <u>Id.</u> at 694. Therefore, Plaintiff cannot proceed on a cause of action for vicarious liability or *respondeat superior* against the City of Corcoran.

However, a municipality or its agent may be liable under § 1983 for constitutional injuries caused by its policies, customs, practices, and or procedures that violate constitutionally protected rights. <u>Id.</u> at 691, 694. To impose liability against a [city] for its failure to act, a plaintiff must show: (1) that a [city] employee violated the plaintiff's constitutional rights; (2) that the [city] has customs or policies that amount to deliberate indifference; and (3) that these customs or policies were the moving force behind the employee's violation of constitutional rights. <u>Gibson v. County of Washoe, Nev.</u>, 290 F.3d 1175, 1193–94 (9th Cir. 2002). A plaintiff must go beyond the *respondeat superior* theory of liability and demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental unit, because municipal liability must rest on the actions of the municipality and not the actions of the

///

employees of the municipality. Connick v. Thompson, 563 U.S. 51, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011).

Here, Plaintiff has alleged that the "City of Corcoran found that defendant Hand-Ronga was acting within their policy, which showed a callous indifference to Plaintiff's rights." ECF No. 12 at 6. Plaintiff has not identified any specific city policy as the moving force behind the violations of his rights. Plaintiff's vague allegations do not suffice to "raise a reasonable expectation that discovery will reveal evidence" of a custom, practice, or policy of the City of Corcoran. Twombly, 550 U.S. at 556.

Therefore, Plaintiff fails to state a claim against the City of Corcoran based on municipal liability.

### C. Failure to Protect Plaintiff -- Outgoing Mail Procedure

Plaintiff alleges that his outgoing mail rights were violated and his safety was jeopardized as the result of the procedure followed at CSP for collection of prisoners' outgoing mail, because other inmates were able to access Plaintiff's mail containing a confidential document labeling Plaintiff as a sex offender. Plaintiff alleges that defendants Davey and Kernan should have had a better method for mail pick-up.

Prisoners have rights under the Eighth Amendment to be protected from attacks by other prisoners. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994) (internal citations and quotations omitted). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Id. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).

Prisoners also have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995). Prisoners retain those First Amendment rights that do not conflict with their status as prison inmates or with the legitimate penological objectives of the prison. Pell v. Procunier, 417 U.S. 817, 822 (1974); accord Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d. 64 (1987). When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. Id. at 89. "[S]uch a standard is necessary if "prison administrators . . . , and not the courts, [are] to

///

make the difficult judgments concerning institutional operations." Pell, 417 U.S. at 822 (quoting Jones v. North Carolina Prisoners' Union, 433 U.S. 119, 128 (1977).

In order to state a cognizable claim for violation of rights pursuant to an offending statute, regulation, or established policy, Plaintiff must first identify the offending statute, regulation, or established policy. Under Turner, the court considers: (1) whether the restriction has a logical connection to the legitimate government interests invoked to justify it; (2) whether there are alternative means of exercising the rights that remain open to the inmate; (3) the impact that accommodation of the asserted constitutional right will have on other inmates, guards, and institution resources; and (4) the presence or absence of alternatives that fully accommodate the inmate's rights at *de minimis* cost to valid penological interests. Turner, 483 U.S. at 89-91.

In this case, although Plaintiff alleges that some policy, rule, or regulation prevented him from keeping his mail confidential and thus jeopardized his safety, he has not identified the policy he is challenging, nor has he alleged that the policy does not reasonably further valid penological interests. Further, Plaintiff has not alleged plausible facts supporting his allegation that another inmate gained access to his mail by using a string tied to something and thrown on the tier to pull it into the other inmate's cell, read the mail, and returned the mail to Plaintiff's cell door, all within approximately half an hour, without being detected. Finally, Plaintiff fails to state a claim against defendants Davey and Kernan for a prison policy, because he has not alleged that either of these defendants made or enforced an unconstitutional policy or practice, or otherwise personally acted, which failed to protect Plaintiff or violated his First Amendment right to send mail.

Therefore, Plaintiff has not stated a cognizable claim based on an unconstitutional policy or practice at Corcoran State Prison that jeopardized his safety, violated his rights to send mail, or otherwise violated his rights.

### D.  **Sex Offender Label - Due Process Claim**

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of

a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983).

The Due Process Clause itself does not confer on inmates a liberty interest in a particular classification status. See Moody v. Daggett, 429 U.S. 78, 88, n.9 (1976). The existence of a liberty interest created by state law is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

Under certain circumstances, labeling a prisoner with a particular classification may implicate a liberty interest subject to the protections of due process. Neal v. Shimoda, 131 F.3d 818, 827 (9th Cir. 1997) ("[T]he stigmatizing consequences of the attachment of the 'sex offender' label coupled with the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility create the kind of deprivations of liberty that require procedural protections.").

Here, unlike in Neal, Plaintiff has not alleged that he was subjected to any loss of privilege or mandatory coercive program affecting his sentence or parole because of his sex offender label The impact on inmates' parole eligibility was critical to Neal's finding of a protected liberty interest. See id. at 830. In this case, Plaintiff alleges that his classification causes him to fear that other inmates know about his classification and may harm him. However, Plaintiff has not alleged any facts showing that he is in actual danger or that any specific threats have been made against him because of his classification. Based on Plaintiff's allegations he has not shown that his misclassification amounts to an atypical or significant hardship beyond the ordinary incidents of prison life. See Kritenbrink v. Crawford, 457 F. Supp. 2d 1139, 1146–49 (D. Nev. 2006) (stigma of sex offender label for five years plus denial of low security classification and work camp assignments an "atypical and significant hardship" for purposes of summary judgment motion); cf Davis v. Neven, No. 2:13–cv–01380–APG–PAL, 2014 WL 4630565, at *2–3 (D. Nev. Sept. 9, 2014) (no due process violation where sex offender classification only affected inmate's housing location).

Therefore, Plaintiff fails to state a due process claim for being labeled a sex offender.

**E.      State Law Claims**

Plaintiff alleges violations of state law, specifically California's Bane Act (Civil Code § 52.1) and California Government Code § 815.2. Plaintiff is informed that violation of state law is not sufficient to state a claim for relief under § 1983. To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights. See Paul v. Davis, 424 U.S. 693 (1976). Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367.

In this instance, the court has not found any cognizable § 1983 claims in the First Amended Complaint against any of the Defendants. Therefore, the court declines to exercise supplemental jurisdiction over Plaintiff's state law claims at this juncture. Moreover, as discussed below, Plaintiff fails to state a claim in the First Amended Complaint under the Bane Act or § 815.2. Therefore, Plaintiff's state law claims fail.

**1.      California's Bane Act**

The Bane Act authorizes individual civil actions for damages and injunctive relief by individuals whose federal or state rights have been interfered with by threats, intimidation, or coercion. See Cal. Civ. Code § 52.1(a) (proscribing interference "by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state . . ."); see also Jones v. Kmart Corp., 17 Cal. 4th 329, 338, 70 Cal.Rptr.2d 844, 949 P.2d 941 (1998) (interpreting Bane Act's use of "interferes" to mean "violates"). "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." Austin B. v. Escondido Union School Dist., 149 Cal. App. 4th 860, 883, 57 Cal.Rptr.3d 454 (2007); see also Doe v. State, 8 Cal. App. 5th 832, 842, 214 Cal.Rptr.3d 391 (2017), review denied (June 14, 2017) ("To prevail on a cause of action under Civil Code section 52.1, the plaintiff must show

that the defendant interfered with or attempted to interfere with the plaintiff's legal right by threatening or committing violent acts."). Plaintiff fails to allege that any of the Defendants interfered or attempted to interfere with his rights by using threats or committing violent acts against Plaintiff. Therefore, Plaintiff fails to state a claim under the Bane Act.

### 2. California Government Code § 815.2

Plaintiff seeks to bring a claim for violation of California Government Code § 815.2. Section 815.2 provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Cal. Gov't Code § 815.2(a). However, an entity is not liable where immunity applies. See id. at § 815.2(b).

Given that the City of Corcoran is the only public entity Plaintiff names as defendant in this case, the court infers that Plaintiff seeks to bring a claim under § 815.2 against the City of Corcoran for finding that defendant "Hand-Ronga was acting within their policy." ECF No. 12 at 7.

"Under California Government Code § 844.6, a public entity cannot be liable for an injury to a prisoner." Lipsey v. Reddy, No. 1:17-cv-00569-LJO-BAM (PC), 2017 WL 4811723 at * 4 (E.D. Cal. Oct. 24, 2017) (citing see also Frary v. Cty. of Marin, No. C 12–3928 MEJ, 2012 WL 6218196, at *12 (N.D. Cal. Dec. 13, 2012) (dismissing California Government Code claims based on death of a prisoner against city and county defendants due to immunity under Cal. Gov't Code § 844.6)). "That code section has a limited exception for injuries caused by the failure to provide certain medical care, which is not applicable here." Lipsey at * 4. See Cal. Gov't Code § 845.6. Thus, Plaintiff is barred from bringing a claim against the City of Corcoran under § 815.2.

## V. CONCLUSION AND ORDER

For the reasons set forth above, the court has found that Plaintiff fails to state any cognizable claims in the First Amended Complaint against any of the Defendants. The court shall dismiss the First Amended Complaint for failure to state a claim, with leave to amend.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." The court will provide Plaintiff with time to file a Second Amended Complaint curing the deficiencies identified above. Plaintiff is granted leave to file a Second Amended Complaint within thirty days. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

The amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555). There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677. Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Id. at 934 (emphasis added). Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of changing the nature of the complaint or adding new defendants for unrelated issues. Plaintiff should also note that he has not been granted leave to add allegations of events occurring after the initiation of this suit on December 19, 2017.

Plaintiff is advised that an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F. 3d 896, 907 n.1 (9th Cir. 2012), and it must be complete in itself without reference to the prior or superceded pleading. Local Rule 220. Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Plaintiff's First Amended Complaint, filed on April 9, 2018, is dismissed for failure to state a claim, with leave to amend;

2. The Clerk's Office shall send Plaintiff a civil rights complaint form;

3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a Second Amended Complaint curing the deficiencies in his claims identified in this order;

4. Plaintiff shall caption the amended complaint "Second Amended Complaint" and refer to the case number 1:17-cv-01704-LJO-GSA-PC; and

5. Plaintiff's failure to comply with this order shall result in a recommendation that this case be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated: **September 21, 2018**         **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE