UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER LIPSEY, JR., | 1:17-cv-01704-LJO-GSA-PC |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE BE DISMISSED, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM (ECF No. 23.)** |
| vs. | |
| N. HAND-RONGA, et al., | |
| Defendants. | **OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS** |

## I.     BACKGROUND

Christopher Lipsey, Jr. ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint commencing this action on December 19, 2017.  (ECF No. 1.)  On April 9, 2018, Plaintiff filed the First Amended Complaint as a matter of course.  (ECF No. 12.)  On September 24, 2018, the court dismissed the First Amended Complaint for failure to state a claim, with leave to amend.  (ECF No. 15.)  On December 3, 2018, Plaintiff filed the Second Amended Complaint.  (ECF No. 18.)

On February 7, 2019, Plaintiff lodged a proposed Third Amended Complaint which the court construed as a request for leave to amend.  (ECF No. 21.)  On February 13, 2019, the court

granted Plaintiff leave to amend, and the Third Amended Complaint was filed on February 12, 2019. (ECF Nos. 22, 23.)

The Third Amended Complaint is now before the court for screening. 28 U.S.C. § 1915A.

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III. SUMMARY OF THIRD AMENDED COMPLAINT

Plaintiff is presently incarcerated at Kern Valley State Prison in Delano, California. The events at issue in the Third Amended Complaint allegedly occurred at Corcoran State Prison in Corcoran, California, when Plaintiff was incarcerated there in the custody of the California

Department of Corrections and Rehabilitation (CDCR). Plaintiff names as defendants N. Hand-Ronga (psychologist), C. Bell (Chief Executive Officer), D. Davey (Warden), S. Kernan (Secretary, CDCR), and A. Venetis-Colon (Senior Psych Supervisor) (collectively, "Defendants").

Plaintiff alleges as follows:

While at Corcoran State Prison SHU,[1] Plaintiff was brought to the rotunda in Building 4A1R or 4A1L, buildings specifically for inmates with mental illness. Dr. Hand-Ronga came to Plaintiff with questions that Plaintiff did not want to answer at the time, so after politely answering the first basic questions Plaintiff stopped answering the more private questions related to why Plaintiff felt suicidal (family issues). Plaintiff told Hand-Ronga, "That's enough, I'm done having you pick my brain, go away." 3ACP at 2-3. Dr. Hand-Ronga got visibly upset and left. Plaintiff was not written up for anything, including being disrespectful or a sexual offense; however, Dr. Hand-Ronga put Plaintiff down as a sex offender.

Plaintiff put his mail out as usual, sending some medical records for his family to keep for him. Somehow, other inmates got ahold of the mail. On the medical records it showed that Plaintiff had committed a sex offense. The next day, every time Plaintiff left the cell, inmates would yell out "Amber Alert," which is what inmates do to known child molesters. 3ACP at 3. Plaintiff had never been accused of committing any sex offense prior to this. After months of protest, it was removed.

Plaintiff has been called a rapist by officers and nurses when he speaks to them in front of inmates, when the office is not doing what it is supposed to do, when nurses are not passing out medications on time, or when nurses repeatedly fail to bring Plaintiff the correct dosage. None of this occurred prior to Plaintiff being labelled a sex offender. Plaintiff received no hearing prior to being labelled a sex offender. Plaintiff's family was informed by someone (besides the documents Plaintiff sent) that people think he is a sex offender.

///

---

[1] Security Housing Unit.

3

Plaintiff engaged in protected conduct, refusing medical treatment (refusing to talk to a psychologist). The same day, Dr. Hand-Ronga labeled Plaintiff a sex offender without due process. This was on the same day that Plaintiff told her (Hand-Ronga) that he did not want her picking his brain any longer. Plaintiff has been reluctant to tell the psychiatrist the truth for fear of some kind of retaliation. Plaintiff alleges that the retaliatory action reasonably advanced a legitimate correctional goal because Plaintiff is likely to be attacked by a prisoner who was in the SHU with him, and now that he is in the general population it will require officers to use force risking their lives to protect Plaintiff. What she (Hand-Ronga) did placed Plaintiff's life, and the institution's safety and security, at risk. That type of accusation follows prisoners their entire life. Plaintiff has never been accused, or convicted of a sex offense.

Plaintiff filed a government claim on August 5, 2017, against defendant D. Davey, Warden of Corcoran SHU, and S. Kernan, Secretary of the CDCR. On October 22, 2017, Plaintiff filed an amended claim adding N. Hand-Ronga's supervisor, A. Venetis-Colon. The Board considered Plaintiff's claims to be too complex and denied them.

Defendants Davey and Kernan failed to establish a practice, policy, or procedure for inmates to send out mail in a secure manner. Currently, inmates with mail that cannot fit through a small slit in the tray slot must place their mail under the door, which Plaintiff did during April-June 2017.

Inmates in the SHU do what is called "fishing." 3ACP at 7. Almost every inmate keeps a long strip of line made out of laundry and places some kind of weight (envelope with papers in it) on the end so that when officers aren't walking by they can quickly "fish" non-contraband or contraband items with each other. "Fishing" in an envelope from one cell to another can take less than 2 minutes. This is what happened to the medical documents Plaintiff was mailing to his family around April-June 2017. Inmates in the SHU usually "fish" all day, so they routinely "fish" in another inmate's mail, whether accidentally or on purpose. In some places there are slabs of concrete or metal directly at the bottom of the door to prevent inmates from "fishing;" however, there aren't any in the building Plaintiff was in, so the Warden and Secretary must be aware of the problem.

Prior to the night his mail was "fished" by another inmate, Plaintiff was not subject to inmates yelling "Amber Alert" when he left his cell. However, after an officer was given Plaintiff's mail by an inmate, who put it in the tray slot, inmates began yelling "Amber Alert" every time he left the cell. Inmates on the yard, with whom Plaintiff usually converses, told other inmates not to talk to him because he's a "chomo." "Chomo" is a prison slang term for a child molester. There are official rules prohibiting "fishing" and punishing inmates for "fishing."

Defendant Hand-Ronga is considered a health care provider and she subjected Plaintiff to pain, suffering, and inconvenience by labeling him a sex offender on March 20, 2017.

On or about October 5, 2017, defendants C. Bell and A. Venetis-Colon ruled that defendant N. Hand-Ronga's actions were not in violation of policy. Their ruling was deceitful and intended to mislead Plaintiff in violation of Code of Civil Procedure § 1711, and to infringe upon Plaintiff's right to file a suit, in violation of § 1708 under Civil Code § 52.1. Plaintiff also claims violation of Code of Civil Procedure §§ 1714 and 3333.2, and the Bane Act under Civil Code § 52.1.

Plaintiff requests nominal, compensatory, and punitive damages; a $25,000.00 civil penalty for the Bane Act violation; and court fees.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d

///

1059, 1068 (9th Cir. 2012); <u>Crowley v. Nevada</u>, 678 F.3d 730, 734 (9th Cir. 2012); <u>Anderson v. Warner</u>, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006); <u>see also</u> <u>Marsh v. Cnty. of San Diego</u>, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" <u>Preschooler II v. Clark Cnty. Sch. Bd. of Trs.</u>, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." <u>Preschooler II</u>, 479 F.3d at 1183 (quoting <u>Johnson</u>, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." <u>Arnold v. Int'l Bus. Mach. Corp.</u>, 637 F.2d 1350, 1355 (9th Cir. 1981); <u>see also</u> <u>Harper v. City of Los Angeles</u>, 533 F.3d 1010, 1026 (9th Cir. 2008).

A.    <u>Sex Offender Label - Due Process Claim</u>

Plaintiff's claims in the Third Amended Complaint arise from his allegations that defendant Hand-Ronga improperly noted on Plaintiff's medical records that he is a sex offender, a label not supported by any accusation or conviction, and that the assignment was made without a hearing. Plaintiff alleges that other inmates found out about the sex offender label and taunted him by shouting "Amber Alert" whenever he left his cell. Plaintiff also asserts that he was called a rapist by officers and nurses when speaking to them in front of other inmates.

In general, prison inmates do not have a protected liberty interest in freedom from alleged classification errors where such errors do not cause the inmates to be subjected to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995). The same principle applies to claimed due process violations arising

from alleged falsification of prison documents.  See Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997) (discussing Sandin, 515 U.S. at 487 n.11).[2]

Changes in conditions relating to classification and reclassification do not implicate the Due Process Clause itself.  See Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987) (citing Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976)) (no constitutional right to particular classification).  Yet, in Neal v. Shimoda, 131 F.3d 818 (9th Cir. 1997), the United States Court of Appeals for the Ninth Circuit found that "[t]he classification of an inmate as a sex offender is precisely the type of 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' that the Supreme Court held created a protected liberty interest." Id. at 829 (quoting Sandin, 515 U.S. at 482).

Stigma alone is insufficient to implicate a liberty interest.  Am. Civil Liberties Union v. Masto, 670 F.3d 1046, 1058 (9th Cir. 2012) ("While stigma alone is inadequate to affect a liberty interest, stigma plus an alteration in legal status can encroach on a cognizable liberty interest."). The Ninth Circuit explained in Neal that the "stigmatizing consequences" of labeling an inmate as a "sex offender," even together with the requirement that "the labeled inmate successfully complete [a] specified treatment program," likely was insufficient to create a liberty interest. Rather, it was the fact that successful completion of a mandatory treatment program was "a precondition for parole eligibility" that gave rise to due process protections.  Id. at 830 (inmates entitled to procedural protections of Wolff v. McDonnell, 418 U.S. 539 (1974), including notice of reasons for classification as sex offender and a hearing at which the inmate may call witnesses and present documentary evidence in his defense); see, e.g., Barno v. Ryan, 399 Fed. Appx. 272 (9th Cir. 2010) (affirming dismissal of claim alleging that classification as a sex offender was erroneous where plaintiff failed to allege any injury other than the erroneous classification itself plus visitation restrictions, and finding that the "alleged classification error did not result in any deprivations or changes in the conditions of confinement that constituted an 'atypical and

---

[2] In Hines, the court of appeals confirmed that prison inmates may still raise retaliation claims based on alleged falsification of prison records.  Hines, 108 F.3d at 269.

significant hardship'") (quoting <u>Sandin</u>, 515 U.S. at 484); <u>Hamilton v. Walsh</u>, 2016 WL 2946621, at *5-6 (D. Nev. Apr. 21, 2016), accepted and adopted in its entirety, 2016 WL 2945200 (D. Nev. May 20, 2016) (finding allegations were insufficient to state a due process claim because a false classification as a sex offender, absent allegations of conditions resulting from the classification that imposed an atypical and significant hardship, did not implicate a protected liberty interest). In the absence of a protected liberty interest, Plaintiff is not entitled to the due process protections required by the Fourteenth Amendment. <u>See</u>, <u>e.g.</u>, <u>Serrano v. Francis</u>, 345 F.3d 1071, 1078 (9th Cir. 2003) (procedural protections apply "only when the disciplinary action implicates a protected liberty interest"); <u>Resnick v. Hayes</u>, 213 F.3d 443, 448-49 (9th Cir. 2000) (where "no protected liberty interest" is implicated, plaintiff has no "cognizable due process claim") (as amended).

Here, unlike in <u>Neal</u>, Plaintiff has not alleged that he was subjected to any loss of privilege or mandatory coercive program affecting his sentence or parole because of his sex offender label. The impact on inmates' parole eligibility was critical to <u>Neal</u>'s finding of a protected liberty interest. <u>See id.</u> at 830. Here, Plaintiff alleges that his classification causes him to fear that other inmates know about his classification and may harm him. However, Plaintiff has not alleged any facts showing that he is was actual danger, or that any specific threats had been made against him because of his classification. Based on Plaintiff's allegations he has not shown that his misclassification amounts to an atypical or significant hardship beyond the ordinary incidents of prison life. <u>See</u> <u>Kritenbrink v. Crawford</u>, 457 F. Supp. 2d 1139, 1146–49 (D. Nev. 2006) (stigma of sex offender label for five years plus denial of low security classification and work camp assignments an "atypical and significant hardship" for purposes of summary judgment motion); <u>cf</u> <u>Davis v. Neven</u>, No. 2:13–cv–01380–APG–PAL, 2014 WL 4630565, at *2–3 (D. Nev. Sept. 9, 2014) (no due process violation where sex offender classification only affected inmate's housing location).

The court finds that the factual allegations in the Third Amended Complaint, even accepted as true and construed liberally, are insufficient to give rise to a cognizable due process claim. The federal guarantees of substantive and procedural due process under the Fourteenth

Amendment apply only when a constitutionally protected liberty or property interest is at stake. See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Board of Regents v. Roth, 408 U.S. 564, 569 (1972). Here, Plaintiff has not established that he had a protected interest in freedom from classification errors.

Therefore, the court finds that Plaintiff fails to state a due process claim for being labeled a sex offender.

**B.** **Retaliation**

Plaintiff claims that defendant Hand-Ronga labelled him a sex offender because Plaintiff had refused medical treatment from her. Plaintiff asserts that he has a constitutional right to refuse medical treatment.

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005).

The second element of a prisoner retaliation claim focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Sorrano's Gasco. Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1288–89 (9th Cir. 2003) (finding that a prisoner establishes a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines, 108 F.3d at 267–68; Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").

The third prong can be satisfied by various activities. Filing a grievance is a protected action under the First Amendment. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir.

///

9

1989). Pursuing a civil rights litigation similarly is protected under the First Amendment. <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532 (9th Cir. 1985).

With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity. . . ." <u>Mendocino Envtl. Ctr. v. Mendocino Cnty.</u>, 192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. <u>Rhodes</u>, 408 F.3d at 568–69 (citing <u>Mendocino Envtl. Ctr.</u>, 192 F.3d at 1300).

With respect to the fifth prong, a prisoner must affirmatively show that "the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." <u>Rizzo</u>, 778 F.2d at 532.

Plaintiff alleges that defendant Dr. Hand-Ronga labeled Plaintiff a sex offender on his medical records even though Plaintiff had never been accused of nor convicted of sexual misconduct. Without question, this is an adverse action against Plaintiff and satisfies the first element of a retaliation claim.

Plaintiff alleges that he refused to continue answering questions asked by the psychologist, Dr. Hand-Ronga, about why Plaintiff felt suicidal. Plaintiff claims that he was exercising his constitutional right to refuse medical care, and that his refusal preceded defendant Hand-Ronga's notation on Plaintiff's medical record that he was a sex offender. Courts have determined that Plaintiff does have a constitutional right under the Fourteenth Amendment to refuse medical care, <u>Cruzan by Cruzan v. Dir., Mo. Dept. of Health</u>, 497 U.S. 261, 278 (1990) (A "competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment."). However, this court has not found any binding authority deciding that refusal of medical treatment constitutes a protected activity for a First Amendment retaliation claim. Nonetheless, even if Plaintiff's refusal of medical treatment were a protected activity, Plaintiff's allegations are insufficient to cause an inference that defendant Hand-Ronga was motivated by retaliatory animus. Plaintiff alleges that there is a causal connection between the adverse action and Plaintiff's protected conduct because Dr. Hand-Ronga labeled Plaintiff a sex

offender on "the same day" Plaintiff told her (Hand-Ronga) that he did not "want her picking his brain any longer." 3ACP at 4 ¶ 3. Plaintiff also alleges that Hand-Ronga was upset when Plaintiff refused to answer more questions. However, Plaintiff's allegation that she was upset, and his circumstantial evidence of suspect timing, without more, is not enough to show that Dr. Hand-Ronga labeled Plaintiff a sex offender *because* Plaintiff had refused medical treatment. Accordingly, Plaintiff has not satisfied the second element of a retaliation claim, and he therefore fails to state a claim for retaliation.

### C. Mail Collection Procedure

Plaintiff alleges that his safety was jeopardized as the result of the procedure followed at Corcoran State Prison for collection of prisoners' outgoing mail because other inmates were able to access Plaintiff's mail containing a confidential document labeling Plaintiff as a sex offender. Plaintiff alleges that defendants Davey and Kernan should have instituted a better method for collection of mail.

Prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995). Prisoners retain those First Amendment rights that do not conflict with their status as prison inmates or with the legitimate penological objectives of the prison. Pell v. Procunier, 417 U.S. 817, 822 (1974); accord Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d. 64 (1987). When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. Id. at 89. "[S]uch a standard is necessary if "prison administrators . . . , and not the courts, [are] to make the difficult judgments concerning institutional operations." Pell, 417 U.S. at 822 (quoting Jones v. North Carolina Prisoners' Union, 433 U.S. 119, 128 (1977).

In order to state a cognizable claim for violation of rights pursuant to an offending statute, regulation, or established policy, Plaintiff must first identify the offending statute, regulation, or established policy. Under Turner, the court considers: (1) whether the restriction has a logical connection to the legitimate government interests invoked to justify it; (2) whether there are alternative means of exercising the rights that remain open to the inmate; (3) the impact that accommodation of the asserted constitutional right will have on other inmates, guards, and

institution resources; and (4) the presence or absence of alternatives that fully accommodate the inmate's rights at *de minimis* cost to valid penological interests. <u>Turner</u>, 483 U.S. at 89-91.

In this case, although Plaintiff alleges that some policy, rule, or regulation prevented him from keeping his mail confidential and jeopardized his safety, he has not identified the policy he is challenging, nor has he alleged that the policy does not reasonably further valid penological interests. Further, Plaintiff fails to state a claim against defendants Davey and Kernan because he has not alleged that either of these defendants made or enforced an unconstitutional policy or practice, or otherwise personally acted, failing to protect Plaintiff or violating his First Amendment right to send mail. Finally, Plaintiff has acknowledged that the "fishing" by other inmates that caused his mail to be taken is prohibited under prison rules.

Therefore, Plaintiff has not stated a cognizable claim based on an unconstitutional mail collection policy or practice at Corcoran State Prison.

**D.    Failure to Protect**

To state an Eighth Amendment failure to protect claim, Plaintiff must allege facts sufficient to show that (1) he was subject to conditions posing a substantial risk of serious harm to his health or safety; and (2) prison officials were deliberately indifferent to those risks. <u>Farmer</u>, 511 U.S. at 837. Plaintiff must allege that each defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and drew that inference. <u>Id.</u>

Plaintiff alleges that defendant Hand-Ronga failed to protect him from harm from other inmates when she labeled him a sex offender on his medical records, and other inmates gained access to the medical records and discovered Plaintiff's sex offender label.

Plaintiff fails to allege facts showing that defendant Hand-Ronga knew that Plaintiff was at substantial risk of serious harm from other inmates. There are no facts showing that defendant Hand-Ronga had any knowledge that other inmates were able to gain access to Plaintiff's medical records and discover that Plaintiff was labelled a sex offender. Therefore, Plaintiff fails to state a claim against defendant Hand-Ronga for failing to protect him.

///

**E.      State Law Claims**

Plaintiff alleges violation of Code of Civil Procedure §§ 1708, 1711, 1714, and 3333.2. Plaintiff also brings claims for negligence, defamation, libel, slander, and violation of the Bane Act, Cal. Civ. Code § 52.1(a).  These are all state law claims.  Violation of state law is not sufficient to state a claim for relief under § 1983.  To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights.  See Paul v. Davis, 424 U.S. 693 (1976). Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law.  See 28 U.S.C. § 1367.

In this instance, the court has not found any cognizable § 1983 claims in the Third Amended Complaint against any of the Defendants.  Therefore, the court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

**V.      CONCLUSION AND RECOMMENDATIONS**

For the reasons set forth above, the court finds that Plaintiff fails to state any cognizable claim against any of the Defendants in the Third Amended Complaint.  Therefore, the court shall recommend that this case be dismissed for failure to state a claim.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires."  Here, the court previously granted Plaintiff leave to amend the complaint, with ample guidance by the court, and Plaintiff has not stated any claims upon which relief may be granted under § 1983.  The court is persuaded that Plaintiff is unable to allege any facts, based upon the circumstances he challenges, that would state a cognizable claim.  "A district court may deny leave to amend when amendment would be futile."  Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013).  The court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted.  28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Therefore, based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1.      This case be DISMISSED, with prejudice, for failure to state a claim upon which relief may be granted under § 1983; and

2.      The Clerk be directed to CLOSE this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **fourteen days** of the date of service of these findings and recommendations, Plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. Nov. 18, 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **August 7, 2019**                        **/s/ Gary S. Austin**
                                           UNITED STATES MAGISTRATE JUDGE